**IMMEDIATE BUSINESS SYSTEMS, INC. and Anthony Eric Benjamin Goodfellow**

v.

**Louis M. RICHARD, District Director, Immigration and Naturalization Service, Atlanta District.**

No. C85–3018A.

United States District Court, N.D. Georgia, Atlanta Division.

July 2, 1986.

Fred L. Cavalli, Beryl B. Farris, Robert C. Schock, Atlanta, Ga., for plaintiff.

Terry Bird, Dist. Counsel, I.N.S., Nina R. Hickson, Asst. U.S. Atty., Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiffs Immediate Business Systems, Inc. ("IBS") and Anthony Goodfellow filed this action to obtain declaratory relief pursuant to the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1153(a)(3) and the Declaratory Judgment Act, 28 U.S.C. § 2201. The matter is before the court on cross-motions for summary judgment. Rule 56, Fed.R.Civ.P.

### I. Factual Background

The facts relevant to these motions are not in dispute. IBS, an American subsidiary of a British company, manufactures and markets a portable computer system. This system was conceived by plaintiff Goodfellow and developed by IBS' British parent corporation. Goodfellow holds an engineering degree from Cambridge University and has been serving as Managing Director of IBS' parent corporation.

In July 1984, Goodfellow was admitted to the United States on a B–1 visa as a visitor for business. Goodfellow was subsequently offered the position of President of IBS. On July 23, 1984, IBS filed a petition seeking to have Goodfellow classified as a third-preference immigrant on the basis of his profession, pursuant to section 203(a)(3) of the Act, 8 U.S.C. § 1153(a)(3). IBS also filed an Application for Alien Employment Certification, on which it indicated that Goodfellow had been offered the position of President. The duties of this position were described as follows: "Guide company's growth and day to day operations. Make executive decisions and set company policies. Promote company products." Administrative Record ("A.R.") at 106.

In support of the petition for classification as a third-preference immigrant, plaintiffs submitted the affidavit of James L. Kennemer, Vice President and Secretary of IBS, who stated as follows:

> IBS, Inc. is in the business of computer systems. The company has developed a complicated system which it manufactures and markets. This system includes a truly portable computer and integral printer. Presently, the system has a capacity to print bills for immediate delivery to customer at their premises when their electricity, gas or other meters are read. Since this system is very unique IBS, PLC has a patent covering this billing machine concept. Corresponding patent applications are pending in the U.S. and Canada.

> Mr. Anthony Goodfellow has been a vital part of the development of Immediate Business Systems, PLC of Great Britain. Mr. Goodfellow was the initial individual who conceived of the idea of this type of system. He has been instrumental in using his engineering education and other attributes in advancing the development and exploitation of this system. In Great Britain Mr. Goodfellow is a chartered engineer and has a degree in Mechanical Engineering. He is a Member of the Institution of Electrical Engineers and a Member of The British Computer Society. Mr. Goodfellow has been a director of IBS of Great Britain since its incorporation.

> Mr. Goodfellow has been visiting the U.S. as the representative of our Great Britain company. He has been advising the U.S. operation concerning the manufacture and development of the computer system in this country.

> We have now offered him a position in the U.S. as President of IBS, Inc. in Birmingham, Alabama. His background truly qualifies him as President and this position definitely requires a professional engineer with computer experience. Mr. Goodfellow meets both these criteria.

Plaintiffs also offered an affidavit by Goodfellow, who stated:

I, Anthony Goodfellow, am presently serving as a Director for Immediate Business Systems PLC of Great Britain. I have been with them since 1976.

I am a chartered engineer and have a degree in Mechanical Engineering. I am also a Member of The Institution of Electrical Engineers and a Member of The British Computer Society. Prior to working for IBS of Great Britain I was employed by International Computers Limited from 1969 to 1976. With International Computer Limited I served in a variety of capacities including: systems engineer, sales executive, project manager, and marketing manager.

Both Immediate Business Systems PLC of Great Britain and the U.S. operation IBS, Inc. are in the business of computer systems. The companies have a complicated system which they manufacture and market. This system includes a truly portable computer and integral printer. Presently, the system has the capacity to print bills for immediate delivery to customers at their premises. This system has gained acceptance with various utility companies. I was the initial individual who conceived of this type of system. With my engineering education and other training I have been instrumental in advancing the development and exploitation of this system. Since this system is very unique a patent has been obtained covering this billing machine concept. Corresponding patent applications are pending in the U.S. and Canada. As Managing Director of Immediate Business Systems PLC of Great Britain I have traveled to the U.S. to confer with our operation located in Birmingham, Alabama. I have been advising them concrening manufacture and development of the computer system in this country. Since the U.S. market ofers continued growth and opportunities I have been offered the position of President of IBS, Inc. in Birmingham, Alabama. IBS, Inc. is incorporated under the laws of the State of Delaware. The corporation has its main office in Birmingham, Alabama. The majority of the stock of IBS, Inc. is owned by Immediate Business Systems PLC of Great Britain. Immediate Business Systems PLC of Great Britain is a British Company under the Companies Act of Great Britain.

The position of President of IBS, Inc. definitely requires a professional person. A professional engineer with computer experience is essential to help manage and direct this growing company. A person not having an engineering education and computer training would not be able to understand or handle the duties that the President of a company such as IBS, Inc. would entail.

In a decision dated August 13, 1984, defendant Richard, the District Director of the Immigration and Naturalization Service ("INS"), denied the petition to classify Goodfellow as a third-preference alien. A.R. at 96–99. The District Director thought it "doubtful" that an engineering degree was a "realistic minimum requirement" for the position of President and he therefore concluded that IBS had "artificially inflated the stated job requirements in order to obtain third-preference classification." The District Director also found that Goodfellow was not qualified for the blanket labor certificate.

IBS appealed the decision of the District Director. On February 8, 1985, Associate Commissioner for Examination Andrew J. Carmichael, Jr., dismissed the appeal. A.R. at 76–77. This decision was primarily based on a finding that the record failed to indicate that IBS had been "doing business" in the United States for one year prior to filing the petition, as required under 20 C.F.R. § 656.10(D)(3).

IBS filed a motion for reconsideration of the February 8, 1985 decision. A.R. at 103–105. In support of its motion, IBS submitted various documents showing that it had in fact been doing business for the previous year.

On April 26, 1985, the Associate Commissioner issued a decision dismissing IBS' motion for reconsideration. A.R. at 10–11. The Associate Commissioner first agreed

that IBS had adequately established that it had been doing business in the United States for the previous year. The Associate Commissioner found, however, that based on IBS' description of the responsibilities of the position of president, an engineering degree did not qualify as an entry level requirement. According to the Associate Commissioner, the position of president called for an individual with academic education in the area of business administration rather than mechanical engineering. The Associate Director held that the academic preparation must be directly related to the position for which professional status was being sought. In sum, the Associate Director concluded that it had not been shown that the position of president required professional training, since Goodfellow had essentially been performing these duties, and that in any event, Goodfellow did not possess the appropriate professional training in the area of business management or administration. On May 21, 1985, plaintiffs filed the instant action to obtain judicial review of this decision by the INS.

## II. Discussion

Plaintiffs in this case seek to obtain an immigrant visa for Mr. Goodfellow pursuant to 8 U.S.C. § 1153. Section 1153 allocates available immigrant visas according to a preference system. In this case, the plaintiffs seek to obtain a visa under the third preference classification, which makes visas available to

qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States.

8 U.S.C. § 1153(a)(3). Plaintiffs seek third preference classification on the basis of Goodfellow's "professional" status as an engineer. See 8 U.S.C. § 1101(a)(32). Defendant does not dispute Goodfellow's professional qualifications as a mechanical engineer.

Defendant points out that in order to obtain third preference classification, it is also necessary to receive labor certification from the Secretary of Labor. Certain occupations have been designated as qualifying aliens for blanket certification, which allows for direct application to the INS for preference classifications. Plaintiffs here seek blanket certification under 20 C.F.R. § 656.10(d), Schedule A, Group IV, which provides blanket certification for

Aliens who have been admitted to the United States in order to work in, and who are currently working in, managerial or executive positions with the same international corporations or organizations with which they have been continuously employed as managers or executives outside the United States for the immediately prior year.

According to the defendant, the final requirement for receiving third preference classification, and the stumbling block in this case, is that the alien show a bona fide purpose to engage in the qualifying profession. See, e.g., Matter of Semerjian, 11 I & N Dec. 751 (1966). In moving for summary judgment in this matter, defendant argues that the plaintiffs have not demonstrated that the position of company president requires the services of a professional, particularly a professional engineer. In support of this contention, defendant relies on the job description of president of IBS. Defendant argues that if this position in fact requires the services of a professional, it would be someone with professional training in the area of business administration. Defendant asserts that while Goodfellow's engineering background might be helpful to IBS, it is not an essential requirement for the position of president. Defendant further contends that the plaintiffs have not shown that Goodfellow would be engaged primarily in his qualifying profession-mechanical engineer. In sum, defendant argues that the administrative record establishes that the INS did not abuse its discretion in denying the petition and that accordingly, summary judgment should be granted for the defendant.

Plaintiffs argue, in their motion for summary judgment, that the administrative record establishes that the INS abused its discretion in denying the petition. Plaintiffs contend that the only evidence in the record which relates to the nexus between the proffered position and Goodfellow's professional training are the affidavits submitted by Kennemer and Goodfellow, quoted above. Plaintiffs contend that Goodfellow is uniquely qualified to serve as president of IBS because Goodfellow invented and developed the patented computer system which IBS manufactures and markets. Plaintiffs assert that because there is no evidence in the record which supports the decision of the INS, summary judgment should be granted in their favor.

The scope of judicial review in a situation where the INS denies a petition for a preferential visa is narrowly circumscribed. This court is not empowered to conduct a de novo review of the facts but rather, must affirm the decision of the INS so long as the decision is not arbitrary, capricious, and an abuse of discretion. An abuse of discretion may be found if there is no evidence to support the decision or if the decision is based on an improper understanding of the law. *See, e.g., Kaliski v. District Director of Immigration and Naturalization Service*, 620 F.2d 214, 216 n. 1 (9th Cir.1980) (citation omitted); *Reyes v. Immigration and Naturalization Service*, 478 F.Supp. 63, 65 (E.D.N.Y.1979). The question presented then by these cross-motions for summary judgment is whether there is evidence in the administrative record which supports the conclusion of the INS that the plaintiffs have not established that the position of president of IBS requires the services of a professional engineer. Because the court finds no evidence in the record which supports the decision of the INS, the court concludes that the defendant abused his discretion.

In concluding that the position of president does not require the services of a professional engineer, defendant relies solely on the description of the job, which states as follows: "Guide Company's growth and day to day operations. Make executive decisions and set company policies. Promote company products." Defendant characterizes this job description as setting forth a position involving primarily executive and sales responsibilities. Thus, the defendant concludes that the appropriate professional training would be in the area of business administration and that an individual who served in this capacity likely would not be involved primarily in engineering.

The job description upon which the defendant relies does not set forth the minimal educational background necessary to properly perform the position in question. Rather, the determination of the appropriate educational criteria has been made by the INS without reference to any evidence or even without consideration of the specific position which the beneficiary would fill. While it may be true that as a general proposition, a business background is the most appropriate professional training for a position as president of a company, plaintiffs in this case have shown that the company involved manufactures and markets a patented computer system which was invented and developed by the beneficiary. To suggest that an engineering degree might be helpful but would not be necessary for an individual who will be setting company policy, guiding the growth and operations, and promoting the products of a specialized company such as IBS is neither logical nor supported by the administrative record in this case. The only evidence in the record which addresses the question of whether an engineering background is necessary to perform these tasks are the affidavits submitted by Kennemer and Goodfellow. Although there is no evidence in the administrative record which contradicts or even casts doubt on the assertions set forth in these affidavits, the INS has apparently chosen to disregard this evidence. In sum, because there is no evidence in the record which supports the decision of the INS rather than the contentions of the plaintiffs, the court concludes that the INS acted arbitrarily in denying the petition.

Accordingly, plaintiff's motion for summary judgment is GRANTED and defendant's motion is DENIED. The defendant is ORDERED to issue the visa petition as requested.