HIRD/BLAKER CORPORATION,
Chye-ong Lim, Plaintiffs,

v.

William S. SLATTERY, District Director,
Immigration and Naturalization Service, Defendant.

No. 88 Civ. 5976 (RWS).

United States District Court,
S.D. New York.

May 13, 1991.

S. Bernard Schwarz, New York City, for plaintiffs.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (James A. O'Brien, III, Sp. Asst. U.S. Atty., of counsel), for defendant.

## OPINION

SWEET, District Judge.

The plaintiffs, Hird/Blaker Corporation ("Hird/Blaker") and Chye-ong Lim ("Lim"), have moved under Rule 56, Fed.R.Civ.P., for summary judgment to reverse the ruling of William S. Slattery, District Director, Immigration and Naturalization Service (the "INS"), denying Hird/Blaker's application to classify Lim as eligible for temporary worker status as an architectural cost estimator, pursuant to section 101(a)(15)(H)(i) of the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1101(a)(15)(H)(i). The INS has moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. Upon the findings and conclusions set forth below, the motion of the INS is granted and that of Hird/Blaker and Lim denied.

*Prior Proceedings*

On October 29, 1987 Hird/Blaker petitioned the INS to classify Lim as a non-immigrant temporary worker pursuant to section 101(a)(15)(H)(i) of the Act, thereby qualifying Lim for a non-immigrant H–1 visa under section 214(c) of the Act, 8 U.S.C. § 1184(c). Hird/Blaker stated in its petition that the architectural cost estimator position required a person holding an engineering degree and that the firm had always used an engineer for that job.

On November 5, 1987 the INS advised Hird/Blaker that its petition had failed to establish that the architectural cost estimator position necessarily required an applicant with an engineering degree and directed the firm to resubmit the petition with additional documentation. In response, Hird/Blaker on December 15, 1987 provided the INS a letter describing its requirements for an architectural cost estimator, an architect's affidavit, and excerpts from two Department of Labor publications, the *Dictionary of Occupational Titles* ("DOT") and *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles.*

On January 12, 1988, the INS denied Hird/Blaker's petition, finding that the firm had failed to establish that the archi-tectural cost estimator position required a person of distinguished merit and ability. The ruling stated in pertinent part:

> You are seeking the services of the beneficiary to be a cost estimator. You contend that the position requires a civil engineering degree. The duties described are those similar to the duties of a construction contractor. Reading of blue prints and cost estimation in the construction industry has been learned by apprenticeship and on the job training. Your assertion that the position requires a baccalaureate is not accompanied by evidence that a degree in civil engineering is a realistic requirement for the specific position that you are offering the beneficiary.

On January 25, 1988, Hird/Blaker appealed the denial to the INS's Administrative Appeals Unit ("AAU"), which affirmed the denial on April 18, 1988. The AAU concluded, "The record is not persuasive the duties of the job cannot be successfully performed by a skilled individual whose education and training falls short of a baccalaureate degree in a specialized area."

This conclusion was made the subject of this action and upon motion of the parties, the court in an Amended Opinion of May 9, 1989 (the "Amended Opinion") directed a remand to the INS. 712 F.Supp. 1095.

The Amended Opinion concluded that the April 18, 1988 finding distinguishing a cost estimator from an engineer was without evidentiary support, as was the finding that there was no evidence that Hird/Blaker has required the services of an engineer in the position of woodworking estimator in the past. The AAU was found to have failed to define an industry standard or a transitional occupation. Familiarity with the Amended Opinion is assumed.

Upon remand, by letter dated November 29, 1989, the AAU requested from Hird/Blaker additional information bearing on the industry standard for architectural cost estimators and whether the position was a transitional occupation. The AAU requested the following information and/or documentation:

(1) A statement from an organization such as the American Society of Professional Estimators or the National Estimating Society describing the normal educational requirements for the position.

(2) Evidence of the petitioner's past hiring practices establishing they have historically hired members of the professions in the proffered position. The evidence should be in the form of official personnel records.

(3) Evidence relating to the hiring practices of similar firms in the industry describing their educational requirements for the proffered position.

*Id.* By letter dated January 3, 1990, Hird/Blaker submitted affidavits from Dr. Albert Spencer, a professor in industrial technology at the Eastern Kentucky University, and L. Duane Griffiths, a professor in wood technology and the director of the National Wood Technology Center at Pittsburgh State University as well as an affidavit from James D'Auria, a practicing architect.

Hird/Blaker submitted two resumes of cost estimators employed by Hird/Blaker and the declaration of the controller of Hird/Blaker, Aristotle De La Cruz, which described the experience and education of several individuals employed as cost estimators at Hird/Blaker and various personnel records, including wage and financial reports and an application for employment as a cost estimator by one Hird/Blaker employee.

In a decision dated July 16, 1990, the AAU again denied the petition, determining that Hird/Blaker had failed to establish that the occupation of architectural cost estimator requires the services of a professional, that Hird/Blaker had failed to meet the test for assessing an industry standard, and that Hird/Blaker had failed to establish that the industry standard for cost estimating requires a bachelor's degree in engineering or its equivalent.

The AAU also held that Hird/Blaker failed to show that it had consistently hired individuals possessing a bachelor's degree in engineering or its equivalent and further held that Hird/Blaker had failed to establish that the position constitutes a transitional occupation.

By motions for judgment on the pleadings and summary judgment the July 16, 1990 AAU decision was made the subject of review. These motions were fully submitted and argued on February 15, 1990.

*The Facts*

The facts were found in the Amended Opinion and remain as set forth except as supplemented below.

Lim remains a professional with a Bachelor of Science degree in a major in civil engineering.

*The Standard of Review*

The alien bears the burden of proof in any administrative proceeding concerning visa status pursuant to section 291 of the Act, 8 U.S.C. § 1361. That section provides, in pertinent part:

Whenever any person makes application for a visa or other document required for entry ... the burden of proof shall be upon such person to establish that he is eligible to receive such visa or document ... and if an alien, that he is entitled to the ... immigrant ... status claim ...

*See Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 310 (9th Cir.1984); *K.C.P. Food Co., Inc. v. Sava,* 623 F.Supp. 1080, 1083 (S.D.N.Y.1985). Thus, as the Second Circuit has correctly observed in *De Los Santos v. INS,* 690 F.2d 56, 60 (2d Cir.1982), "[i]t is not the province of the courts to insist that the INS's interpretations ... result in the perfect immigration scheme or even that they be the best interpretation possible." Simply put, a reviewing court must not substitute its own judgment and policy preferences for those of INS officials vested by law with the exercise of discretionary authority. *See Bertrand v. Sava,* 684 F.2d 204, 217 (2d Cir. 1982).

As stated in the Amended Opinion, an abuse of discretion standard is applicable. An abuse of discretion is shown only if the plaintiff establishes that the decision under review was made without rational explanation, inexplicably departed from established

authorities, or rested on an impermissible basis. *See Li Cheung v. Esperdy*, 377 F.2d 819, 820 (2d Cir.1967); *London Typographers, Inc. v. Sava*, 628 F.Supp. 570, 576 (S.D.N.Y.1986). As the court stated in *Wong Wing Hang v. INS*, 360 F.2d 715, 718 (2d Cir.1966), an abuse of discretion exists "only where no reasonable man would take the view under discussion."

Since Lim is concededly a professional, the review must concern whether the INS abused its discretion in its determination of the standard by which a professional in an industry is determined and whether the record failed to support Hird/Blaker's contentions that an industry standard existed with respect to woodworking estimator and whether Lim's predecessor met such a standard. Finally, an issue is presented as to whether the AAU abused its discretion in determining and applying its "transitional occupation test."

### I. *The Industry Standard Applied Was Not An Abuse Of Discretion*

 It must be shown that the position the alien seeks to fill requires the services of a professional or of someone who is prominent, renowned, or preeminent in his field. *See, e.g., Hird/Blaker Corp. v. Sava*, 712 F.Supp. 1095, 1098 (S.D.N.Y. 1989) (citing *Matter of Caron Int'l, Inc.*, Interim Decision No. 3085, at 6). Here, of course, Lim is concededly a professional, but he and Hird/Blaker must establish that the job he seeks is a position requiring performance by a professional.

First, the position must require a degree that involves a "precise and specific course of study which relates directly and closely to the position in question." *Matter of Michael Hertz Assocs.*, Interim Decision No. 3046, at 3 (Comm.1988). An occupation that requires a general degree such as business administration or liberal arts, therefore, is not a "profession." *See id.* at 3; *see also Caron Int'l*, Interim Decision 3085, at 8 (Comm.1988) (finding that vice president for manufacturing in textile company is not professional position because individual holding general degree in business, engineering or science could perform

job). Second, "[t]he degree requirement must be an industry standard in parallel position among similar firms and institutions." *Caron Int'l*, Interim Dec. No. 3085, at 5. A position does not constitute a profession simply because the petitioning employer requires an individual holding a specific bachelor's degree. *See id.* Finally, the employer must show that it "normally imposes [a degree] requirement" on the position. *Id.*

Here the AAU found that Hird/Blaker failed to establish that the industry standard for an architectural woodwork cost estimator requires a bachelor's degree in engineering or its equivalent. In addition, Hird/Blaker did not establish that it had consistently hired individuals with bachelor's degree in engineering or the equivalent or that similar firms in the industry need and consistently use professionals in the proffered position, both appropriate tests to determine professional need.

### II. *Hird/Blaker Failed To Establish An Industry Standard*

Here, the AAU found that the affidavits from three individuals attesting in Hird/Blaker's behalf did not establish that the industry standard for architectural cost estimating requires an engineering degree or its equivalent. The AAU noted that Drs. Griffiths and Spencer opined that an individual with six to eight years of experience and an apprenticeship but lacking education can perform the duties of the position, while James D'Auria, though specifying that an engineering education is required, failed to indicate the level of that education. The AAU concluded that the evidence did not establish that similar firms in the industry require a bachelor's degree in engineering or an equivalent baccalaureate level of education nor that the expertise of the affiants entitled them to evaluate academic credentials for architectural cost estimators.

Dr. Griffiths, a professor in wood technology at Pittsburgh State University, stated that the position may be performed by "an individual who has completed not only [an] applicable apprenticeship, but also six

to eight years of daily experience and responsibilities, or a technologist/engineer who would have achieved a professional background during the completion of an Engineering or Industrial Technology Baccalaureate Degree." Dr. Griffiths further noted that, "based upon the background of the estimators who attend Pittsburgh State University's National Wood Technology Center's monthly industrial seminars, the field demands at least a Bachelors Degree in Industrial Technology, engineering, or equivalent of the job experiences." Dr. Griffiths stated that "[d]ue to the complexity of the processes, the need to obtain and apply theoretical knowledge in practice, and significant, recent technological developments in the field of endeavor, Pittsburgh State University, after careful study and consideration, determined to award Bachelor of Science degrees in Industrial Technology." At best, Dr. Griffiths' opinion demonstrated that an individual with either a bachelor's degree in industrial technology or an apprenticeship and sufficient experience is qualified to perform in the field of wood products manufacturing.

Dr. Spencer, a professor in the department of industrial education and technology at the Eastern Kentucky University, stated that an individual who acquires six to eight years of experience and an apprenticeship or a bachelor's degree in industrial technology or engineering will qualify as an architectural cost estimator. Although he established that the curriculum offered by the Eastern Kentucky University for a degree in industrial technology includes drafting, mathematics, and computer courses, Dr. Spencer did not demonstrate that engineering courses or degrees are offered by that school. Dr. Spencer relied on job vacancy announcements for positions offered to industrial technology graduates, but those announcements failed to demonstrate that a degree or its equivalent is required for cost estimating.

The affidavit of James D'Auria, president of his own architectural firm and holder of a bachelor's degree in architecture, stated that the position of architectural cost estimator requires an engineering education. However, he did not indicate whether he or any other firms had historically employed cost estimators requiring that type of education or whether he was ever personally engaged in that endeavor, nor did he state the level of engineering education required for architectural cost estimating.

■ As to the affiants' expertise in evaluating academic credentials for architectural cost estimators, the AAU relied on the assessment that an expert's qualifications lies within the sound discretion of the trier-of-fact, and may not be disturbed unless " 'manifestly erroneous.' " *See, e.g., N.V. Maatschappij, etc. v. A.O. Smith Corp.,* 590 F.2d 415, 418 (2d Cir.1978) (citing *Fernandez v. Chios Shipping Co.,* 542 F.2d 145, 153 (2d Cir.1976); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[1]–[02] (1978). In *Caron Int'l,* for instance, the INS Commissioner noted:

> This Service may, in its discretion, use as advisory opinions statements from universities, professional organizations, or other sources submitted in evidence as expert testimony. Nevertheless, since the Service is responsible for making the final determination regarding a beneficiary's eligibility for the benefit sought, where an opinion is not in accord with other information or is in any way questionable, the Service is not required to accept or may give less weight to that evidence.

*Id.* at 7.

The INS properly concluded that those affidavits, not demonstrating previous evaluation experience, did not establish the affiants' expertise in evaluating academic prerequisites for architectural cost estimating.

Finally, Hird/Blaker failed to provide, as the AAU requested, a statement from a professional organization showing the normal educational requirements for the position. Although the affiants alleged that an individual with an engineering or industrial technology degree can qualify for the position, none of the affiants themselves qualified as a professional organization, nor cited a specific example where an architectur-

al cost estimator was hired based on his engineering degree or its equivalent.

On this record the AAU did not abuse its discretion by concluding that Hird/Blaker and Lim failed to establish that the position of architectural estimator requires a member of the professions.

### III. *Hird/Blaker Failed To Establish That It Consistently Hired Individuals With Engineering Degrees Or Its Equivalent*

■ The AAU concluded that, based on the record, Hird/Blaker historically hired at least four individuals to perform the duties of the position, not one of whom held the equivalent of an engineering degree from a United States university. Except for one employee who acquired a foreign education in engineering of an unspecified level, all of the employees studied in unrelated fields and were first employed as estimators in the industry before obtaining any education in a related field of study.

According to Hird/Blaker the AAU erred in failing to accord appropriate weight to evidence showing that Martin Hird ("Hird"), the president of Hird/Blaker, possesses an engineering degree and has performed cost estimating duties for the petitioner. Hird, the founder of the corporation in 1974 acquired an engineering degree from the Massachusetts Institute of Technology and performed executive duties for Hird/Blaker at the same time that he performed estimating duties. While it is quite logical for the president of a large company that manufactures and installs architectural woodwork products for major corporations to hold an engineering degree, *see, e.g., Immediate Business Systems, Inc. v. Richard,* 645 F.Supp. 355, 358–59 (N.D.Ga. 1986) (position of manufacturer president held to require professional engineer), the AAU did not abuse its discretion in concluding that Hird's duties with the company did not establish consistent hiring of employees holding bachelor's degrees in engineering as architectural woodworking estimators.

On the record before it, the AAU did not abuse its discretion by finding that Hird/Blaker has employed at least four individuals in the position of cost estimator, only two of whom held engineering degrees, one being Hird. Hird/Blaker's original contention that it has "always had an individual with an engineering degree perform [architectural cost estimator] services" was rebutted on remand.

### IV. *Hird/Blaker Failed To Establish That Architectural Cost Estimating Is A Transitional Occupation*

■ In its decision remanding this case to the AAU, this court ordered that the AAU should alternatively consider whether architectural cost estimating constitutes an occupation in transition from non-professional to professional status. *See Hird/Blaker Corp. v. Sava,* 712 F.Supp. at 1102. The AAU concluded on remand that Hird/Blaker did not show that cost estimating is a transitional occupation.

In establishing a transitional occupation, the INS has recognized that "the vocations included in the term 'profession' in our modern highly industrialized society are constantly expanding, consistent with the greater knowledge and specialized training that such a society demands." *See Matter of Shin,* 11 I & N Dec. 686, 687 (Dist.Dir. 1966). In this regard, a formerly non-professional occupation can be considered professional if the qualification requirements for the position have significantly increased due to technological or other advancements. *See, e.g., Hertz Associates, supra,* Interim Decision No. 3046, at 3–4; *Matter of Villanueva,* 13 I & N Dec. 733, 734–36 (Dep.Assoc.Comm.1971); *Matter of Panganiban,* 13 I & N Dec. 581, 582–83 (Dept. Assoc.Comm.1970).

The Amended Opinion, on the basis of the Occupational Outlook Handbook, 1987–88 Edition, stated that there was some evidence that cost estimators might constitute a transitional occupation and concluded that Hird/Blaker ought to be given the chance to supplement the record. *Hird/Blaker Corp. v. Sava,* 712 F.Supp. at 1102–03. On remand, Hird/Blaker failed to demonstrate that a "progression in responsibility or complexity" required a mem-

878

ber of the professions. No technological developments have been defined, nor any increasing complexity of the field, nor the need to apply theoretical knowledge.

Assuming, as the AAU found that the industry standard did not require a professional, Hird/Blaker failed to show by the actions of its own or by others similarly situated that the occupation was transitional either on the basis of an emerging technology or as a result of hiring practices.

*Conclusion*

For the foregoing reasons, the motion of the INS for judgment on the pleadings is granted, that of Hird/Blaker and Lim denied. Settle judgment on notice.

It is so ordered.