*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0410P (6th Cir.)
File Name: 01a0410p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

STEELTECH, LTD.,

      *Plaintiff-Appellant,*

      *v.*

UNITED STATES
ENVIRONMENTAL
PROTECTION AGENCY,

      *Defendant-Appellee.*

No. 00-2008

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00736—Richard A. Enslen, District Judge.

Submitted: November 2, 2001

Decided and Filed: November 28, 2001

Before: KEITH, BOGGS, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Scott J. Steiner, RHOADES, McKEE, BOER, GOODRICH & TITTA, Grand Rapids, Michigan, for Appellant. Joan M. Pepin, Susan L. Pacholski, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Steeltech, Ltd., appeals the district court's affirmance of the civil penalty imposed by an EPA administrative law judge ("ALJ") under the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11001-11050, for Steeltech's failure to file timely reports regarding its processing of toxic chemicals. Steeltech has not contested its liability under EPCRA, a strict liability statute; instead, Steeltech contends that the civil penalty assessed by the EPA is excessive because the agency failed to give due consideration to the mitigating circumstances surrounding Steeltech's failure to file the reports. The ALJ calculated the civil penalty by means of the Environmental Response Policy ("ERP"), a statement of general policy rather than a rule. Steeltech's argument is that the ALJ applied the ERP as though it were a rule, however, and that the $61,736 civil penalty imposed is excessive because Steeltech's EPCRA violations were of low gravity and caused by the firm's lack of awareness of its reporting obligations.

We **AFFIRM** the judgment of the district court. Applying the ERP, the ALJ and Environmental Appeals Board ("EAB") considered Steeltech's arguments and rejected them based on valid considerations. Thus, we are unable to conclude that the EPA acted arbitrarily or capriciously in the present case.

## I. BACKGROUND

A Michigan corporation located in Grand Rapids, Steeltech manufactures iron-, nickel-, chromium-, and cobalt-based alloy castings. Nickel, chromium, and cobalt are chemicals identified as "toxic" by federal law and thus subject to the reporting requirements of the EPCRA. Despite processing substantial quantities of these chemicals in the calendar years 1988, 1989, 1990, 1992, and 1993, Steeltech failed to file

timely reports (the Form Rs required under the EPCRA) for these years and chemicals. Steeltech's failure to file timely Form Rs for the years 1988-1990 for nickel and chromium came to the attention of both Steeltech and the EPA when the EPA conducted a consensual inspection of Steeltech's facility in February 1992. Steeltech officials filed the necessary Form Rs for the years 1988-1990 the day after the inspection.

The EPA then filed an administrative complaint against Steeltech based on its failure to file timely Form Rs for nickel and chromium for the years 1988-1990 on September 2, 1994. On October 26, 1994, a Steeltech official advised the EPA that Steeltech had also failed to file timely Form Rs for 1992 (for nickel and chromium) and for 1993 (for nickel, chromium, and cobalt, which was produced in reportable quantities in 1993 but in none of the other years at issue). The EPA subsequently amended its complaint to include these EPCRA violations. This amended complaint was served on Steeltech on March 28, 1995.

A hearing on the amount of the civil penalty to be assessed against Steeltech was held before Chief Administrative Law Judge Susan L. Biro on September 23, 1997. The parties submitted stipulated facts and exhibits to the ALJ; the EPA did not present any additional evidence or testimony at this hearing. Steeltech presented the testimony of two witnesses at the hearing, and an intervenor, the founder of the company who was potentially liable for some of the civil penalty because of an indemnification agreement with the current owner, also testified. The greater part of this testimony concerned Steeltech's lack of awareness of the corporation's obligation to file Form Rs under the EPCRA. In addition, there was testimony regarding the corporation's troubled financial state during some of the years at issue, and the steps Steeltech has subsequently taken to comply with EPCRA reporting requirements.

After dismissing the 1988 counts for nickel and chromium because the five-year statute of limitations on EPCRA claims

had expired on those counts, the ALJ assessed a civil penalty against Steeltech for the remaining nine counts for nickel and chromium for 1989, 1990, 1992, and 1993 and for cobalt for 1993. During the years covered by these counts, Steeltech processed a total of 1,269,349 pounds of nickel, 885,796 pounds of chromium, and 162,369 pounds of cobalt. Although the statute authorized a maximum possible civil penalty of $225,000 for these nine counts, the EPA calculated an initial civil penalty of $74,390. J.A. at 24. After the 1997 hearing and considering the post-hearing briefs, however, the ALJ adjusted the civil penalty downward for a variety of reasons and assessed a civil penalty of $61,736. J.A. at 44. This is the amount at issue in the present case.

In arriving at these figures, both the agency and the ALJ relied upon the terms of the EPCRA, which provides for civil penalties up to $25,000 for each violation, 42 U.S.C. § 11045(c)(1), and 40 C.F.R. § 22.27(b), which directs the agency to consider any guidelines issued under the statute in assessing civil penalties. The relevant guidelines are found in the EPCRA § 313 Enforcement Response Policy ("ERP"). The ERP was issued by the EPA's Office of Compliance Monitoring as a general statement of policy "to ensure that enforcement actions for violations of EPCRA § 313 . . . are arrived at in a fair, uniform and consistent manner; that the enforcement response is appropriate for the violation committed; and that persons will be deterred from committing EPCRA § 313 violations." J.A. at 230 (ERP at 3). To achieve these ends, the ERP establishes an elaborate methodology for assessing civil penalties for EPCRA violations. Both the ALJ and the Environmental Appeals Board ("EAB") carefully applied the ERP to the facts of this present case, with the ALJ arriving at the civil penalty assessed and the EAB affirming that amount. The district court subsequently affirmed the EAB's final decision and civil penalty of $61,736 against Steeltech. *See Steeltech, Ltd. v. United States Envtl. Prot. Agency*, 105 F. Supp. 2d 760 (W.D. Mich. 2000).

supported by [substantial] evidence, we will not reverse, even if the facts permit an alternative conclusion."). Because the record fully supports the ALJ's factual determinations, we decline Steeltech's invitation to second-guess the ALJ's use of the ERP in assessing the civil penalty in this case.

### III. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

present case does not present circumstances that raise policy issues not accounted for in the ERP and thus that departure from the ERP is not warranted by the circumstances of this case. The ALJ's use of the word "extraordinary" does not negate the rest of the ALJ's lengthy and well-reasoned opinion. In reviewing the ALJ's order, the EAB concluded that, even if the ALJ had applied an improperly high standard for deviating from the ERP, any error in doing so was harmless as "it [was] appropriate to apply the ERP to these facts and the circumstances [did] not warrant a deviation from the ERP's guidance." J.A. at 58 (EAB Op. at 13). The EAB went on in its opinion to consider and reject Steeltech's argument that the agency should have deviated from the ERP guidelines in assessing the civil penalty in the present case. Like the district court, we are unable to conclude that the ALJ's assessment of a civil penalty of $61,736 in the present case, under the guidance of the ERP, was either arbitrary or capricious.

With respect to Steeltech's second argument — i.e., that the facts of this case support its position that the ERP should not have been applied — Steeltech misconstrues the substantial evidence standard of review. *See* 5 U.S.C. § 706(2)(E). Steeltech has not challenged specific factual determinations in the record. Instead, Steeltech argues that there was substantial evidence on the record to support its position that the ERP should not have been applied at all. Under the substantial evidence standard, however, our review of the ALJ's factual determinations is limited to determining whether those determinations are supported by substantial evidence on the record as a whole — not whether there was substantial evidence in the record for a result other than that arrived at by the ALJ. *See, e.g., Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 900 (6th Cir. 1996) (holding that, under substantial evidence standard of review, court may not supplant the factual findings of an agency even when an alternative finding is also supported by substantial evidence); *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("[A]s long as the ALJ's conclusion is

The specific application of this methodology to the facts of the present case is not at issue in this appeal. Steeltech argues that the agency acted arbitrarily and capriciously in applying the ERP to the present case at all. Steeltech's argument boils down to this: Although it admits liability for failing to comply with EPCRA, Steeltech argues that it should escape significant penalties for its multiple violations of EPCRA because, in the final analysis, all it did was fail to file some forms, and, moreover, it failed to do so only because it lacked knowledge of the law. Steeltech argues that, rather than apply the ERP, the EPA should have assessed a civil penalty somewhere in the amount of $10,000. To defend the fairness of its desired result, Steeltech points to a number of facts: (1) its lack of knowledge regarding its reporting responsibilities under EPCRA, at least prior to the 1992 inspection; (2) its poor financial condition for much of the period at issue, which forced its principal officers to concern themselves solely with keeping the firm in business; (3) the failure of EPA to demonstrate any harm to the environment or any effect on the public's right to know under the statute; and (4) the EPA's failure either to put Steeltech on the relevant mailing list or to file its administrative complaint while the firm could have raised an inability-to-pay defense.

## II. ANALYSIS

This court reviews de novo the district court's decision affirming an agency determination and applies the appropriate standard of review to the decision of the agency. *Community First Bank v. National Credit Union Admin.*, 41 F.3d 1050, 1054 (6th Cir. 1995). Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), this court will set aside the agency's determination only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See also Spitzer Great Lakes Ltd. v. United States Envtl. Prot. Agency*, 173 F.3d 412, 414 (6th Cir. 1999).

Steeltech's argument on this appeal can be divided into two parts. First, Steeltech argues that the ALJ, and subsequently

the EAB, paid "mere lip service" to the distinction between a policy statement and a rule, and that this failure to treat the ERP as a policy rather than as a rule is reversible error. Second, Steeltech argues that the facts developed in the administrative hearing support its conclusion, as a policy matter, that the ERP should not have been applied. In our view, neither of these arguments has merit.

With respect to Steeltech's first argument, the ALJ expressly recognized that, under the APA, "a penalty policy, such as the . . . ERP, is not unquestionably applied as if the policy were a rule with 'binding effect.'" J.A. at 30 (ALJ Op. at 10) (citation omitted). The ALJ continued: "In setting the penalty, Administrative Law Judges have 'the discretion either to adopt the rationale of an applicable penalty policy where appropriate or to deviate from it where circumstances warrant.' However, . . . the procedural Rules governing this proceeding require that 'any civil penalty guidelines' be 'considered' and that deviations from the amount of penalty recommended to be assessed in the complaint be accompanied by specific reasons therefor." J.A. at 30 (ALJ Op. at 10) (citations omitted). Thus, it is clear that the ALJ understood that the ERP was only a policy, not a rule, and that it had the discretion to depart from the ERP if there was reason for doing so.

The ALJ also specifically rejected Steeltech's argument that "the ERP should not be utilized at all in calculating the penalties," J.A. at 37 (ALJ Op. at 17), and gave detailed reasons for applying the ERP in response to Steeltech's arguments against doing so. Thus, in answer to Steeltech's argument that it was at "the other end of the spectrum" from the "most recalcitrant violator" of EPCRA, for example, the ALJ emphasized that "EPCRA is a strict liability statute; 'intent' is not an element," and that the ends of the statute are frustrated by every failure to report, irrespective of culpability. J.A. at 37. Thus, the ALJ concluded that Steeltech's lack of culpability was not a reason for departing from the ERP-recommended penalty, especially since the strict liability nature of the statute was intended to "strongly discourag[e] ignorance of EPCRA." J.A. at 38.

The flaw in Steeltech's argument is that the issues of liability and punishment are not so easily separated. Although Steeltech is certainly correct that liability and the severity of punishment are distinct inquiries, it must be remembered that liability and punishment serve similar purposes. To find a party liable despite its lack of culpability, but then to reduce, significantly, the applicable penalty based on this lack of culpability, would certainly undermine the goals of the statute. *Cf. Steeltech*, 105 F. Supp. 2d at 767 ("The EPA's decision not to limit the penalties for unintended violations was reasonable because such a policy might have . . . the effect of encouraging a lack of diligence on the part of regulated facilities . . . .").

Along these lines, the ALJ also rejected Steeltech's assertion that the ERP "is . . . directed solely towards intentional, recalcitrant misfeasors." J.A. at 38. Instead, the ALJ stressed that the ERP guidelines "encompass[] a whole range of violators and circumstances under which violations occur, providing flexibility in the penalty proposed based upon circumstances." J.A. at 38. It was in this context that the ALJ's language provided Steeltech with one of its stronger arguments: "This case presents no extraordinary circumstances which would suggest any deviation from the ERP . . . ." J.A. at 38. Steeltech has argued that this statement reveals that the ALJ erred in applying too exacting a standard for deviating from ERP; the ALJ's use of the word "extraordinary" in this sentence indicates, according to Steeltech, that the ALJ treated the ERP as if it had the effect of a rule of law. But in the context of the ALJ's entire opinion, such a reading of this single use of the word "extraordinary" is untenable. The ALJ expressly stated that the ERP was not a rule and that she had the discretion to depart from the ERP, if appropriate. The statement that this case does not involve "extraordinary" circumstances, in this broader context, must be read as meaning only that the