**EG ENTERPRISES, INC., d/b/a, Mexican Wholesale Grocery, Plaintiff,**

v.

**DEPARTMENT OF HOMELAND SECURITY, United States Citizenship and Immigration Services, Defendant.**

No. 06–10426.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 19, 2006.

Steven M. Garmo, Garmo Assoc., Farmington Hills, MI, for Plaintiff.

Derri T. Thomas, U.S. Attorney's Office, Detroit, MI, for Defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff EG Enterprises, Inc., d/b/a Mexican Wholesale Grocery ("EG") filed this action pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, et. seq., against the Defendant United States Citizenship and Immigration Services ("USCIS")—a division of the United States Department of Homeland Security. EG contends that USCIS erred in denying its petition for an H–1B visa filed on behalf of Ms. Manal Khalid Yonan ("Ms.Yonan").

The matter is presently before the Court on EG's motion for summary judgment and USCIS's cross-motion for summary judgment. After reviewing the parties' briefs and the administrative record, the Court has determined that it is appropriate to decide the matter "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(e)(2). For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgement.

### II. FACTUAL AND PROCEDURAL BACKGROUND

EG Enterprises is a wholesale company that primarily offers a wide variety of Mexican groceries and produce to merchants in metropolitan Detroit. EG was established in 2001, currently has six employees, and recently reported gross sales of over $3.5 million. On July 11, 2005, EG filed a Form I–129, Petition for a Nonimmigrant Worker, with the USCIS Nebraska Service Center, seeking to employ Ms. Yonan as a temporary H–1B "specialty occupation" worker. Specifically, EG sought to employ Ms. Yonan as an "accountant" on a full-time basis for three years, at an hourly wage of $19.25. Ms. Yonan, a native and citizen of Iraq who is living in Amman, Jordan, possesses a Bachelor of Science degree in Accounting from the University of Baghdad in Iraq. Global Education Group, Inc.[1] evaluated the degree and determined that it was equivalent to a Bachelor of Science degree in Accounting awarded by a regionally accredited university in the United States.

---

1. Global Education Group, Inc. is an internationally recognized service firm comprised of experienced professional consultants with extensive and diverse backgrounds in the field of international education. Employees have significant exposure to both U.S. and foreign educational systems, authored articles and papers, attended professional conferences, and presented seminars on international education. [*See* Administrative Record ("AR") at 41]

As part of its I–129 application, EG attached a description of the "accountant" position and a breakdown of estimated time Ms. Yonan would spend on her various duties.[2] According to EG, the duties would primarily involve applying principles of accounting to analyze financial data and prepare financial reports. Specifically, Ms. Yonan would be required to audit reports; create spreadsheets; perform cost-benefit analysis; examine assets, liabilities, and capital reserves; and analyze current and future financial positions. Additionally, Ms. Yonan would design balance sheets, charts, and graphs to facilitate management in financial decision-making, and compile and analyze financial data in order to prepare entries for general ledger accounts.

After reviewing the initial application, USCIS found that the documentation submitted in support of the I–129 was insufficient to demonstrate eligibility for an H–1B visa in a "specialty occupation." On September 10, 2005, USCIS issued a Request for Evidence, requiring EG to submit additional documentation, including a detailed description of Ms. Yonan's potential day-to-day duties, the percentage of time devoted to each of those duties, and evidence showing that the offered position qualified as a "specialty occupation."

In a letter dated November 29, 2005, EG responded to the request for additional evidence and provided (1) a detailed description of daily duties and corresponding time percentages; (2) a letter from Fahmi Abbo, CPA, stating that his accounting firm provided "accounting and bookkeeping" services to EG for four years and employs experienced CPA's who hold baccalaureate or higher degrees; (3) a chart identifying EG's six employees and their respective positions and education; and (4) "accountant" job posting printouts from www.monster.com identifying specific job duties for those positions.

On December 23, 2005, USCIS denied EG's I–129 application for an H–1B visa. USCIS determined the record established that Ms. Yonan's bachelor's degree from the University of Baghdad was equivalent to an accounting degree from an accredited university in the United States. Administrative Record ("AR") at 88. However, USCIS concluded that EG failed to establish that the proffered position met the requirements for designation as a "specialty occupation." AR at 90. Specifically, USCIS found that the evidence did not prove the proffered duties were so specialized that knowledge required to perform them is usually associated with a bachelor's degree or higher. USCIS noted that simply titling a position "accountant" is insufficient to establish qualification as a "specialty occupation." AR at 89. Rather, USCIS stated that it is "the actual position duties that serve as the basis for determining eligibility." *Id.*

Relying upon the Department of Labor's Occupation Outlook Handbook ("OOH"), 2004–2005 Edition, and the description of the proffered employment, USCIS concluded that the majority of Ms. Yonan's time would be spent performing duties that fall within the category of "Bookkeeping, Accounting and Auditing Clerk"[3]

---

**2.** EG submitted the following estimated breakdown: financial report analysis: 25%; spreadsheet formation: 10%; profit and loss reports: 10%; account reconciliation: 25%; staff meetings: 5%; financial document auditing: 25%. [*See* AR at 30]

**3.** USCIS cited the OOH, which describes the position of a bookkeeper, accounting and auditing clerk as follows: "In small establishments, bookkeeping clerks handle all financial transactions and bookkeeping. They record all transactions, post debits and credits, produce financial statements, and prepare re-

rather than the category of "Accountants and Auditors"[4] because EG failed to provide evidence that the position included complex or advanced accounting duties. AR at 89–90. Relying again on the OOH, USCIS noted that employers normally do not require a minimum of a four-year degree for bookkeeping positions, nor do they require the attainment of a degree in a "specific specialty" (or its equivalent) as is necessitated by the regulations regarding an H–1B "specialty occupation." AR at 90. Additionally, USCIS concluded that EG had not established that businesses of similar type, number of employees, and gross annual income typically require services of individuals with specialized degrees. After considering the letter from Fahmi Abbo, USCIS also found that EG had not shown that it has, in the past, required services of individuals with baccalaureate or higher degrees for the offered position. *Id.*

On January 31, 2006, EG filed a complaint against USCIS seeking judicial review under the Administrative Procedures Act, 5 U.S.C. § 702, et. seq., and reversal of the USCIS's denial of the I–129 petition for an H–1B visa on behalf of Ms. Yonan. On May 11, 2006, EG filed a motion for summary judgment, arguing that the USCIS decision should be vacated because the agency abused its discretion in denying the H–1B visa petition. Subsequently, USCIS filed a cross-motion for summary judgement pursuant to Fed.R.Civ.P. 56, requesting the Court to deny EG's motion for summary judgment and affirm denial of the H–1B petition.

## III. JURISDICTION AND SCOPE OF REVIEW

### A. Jurisdiction

■ Generally, a petitioner has 30 days (33 days if served by mail) to administratively appeal an adverse decision on a visa petition. *See* 8 C.F.R. § 103.3(a)(2)(i). Here, EG missed that deadline and directly appealed the USCIS denial to this Court without first appealing to the Administrative Appeals Office ("AAO"). However, there is no statutory requirement that a petitioner exhaust its administrative remedies before filing suit in United States District Court, and the "Supreme Court has recognized that, in cases governed by the [APA], section 10(c) of the APA, 5 U.S.C. § 704, ... limits the discretion of courts to impose exhaustion requirements." *Darby v. Cisneros,* 509 U.S. 137, 153, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993); *Young v. Reno,* 114 F.3d 879, 882 (9th Cir.1997).[5] The Immigration and

ports and summaries for supervisors and managers.... More advanced accounting clerks may total, balance, and reconcile billing vouchers; ensure completeness and accuracy of data on accounts; and code documents, according to company procedures. These workers post transactions in journals and on computer files and update the files when needed." [AR at 89]

4. USCIS cited the OOH, which states: *"Management accounts*—also called cost, managerial, industrial, corporate, or private accounts—record and analyze the financial information of companies for which they work. Other responsibilities include budgeting, performance evaluation, cost management, and asset

management. Usually, management accountants are part of executive teams involved in strategic planning or new-product development. They analyze and interpret the financial information that corporate executives need to make sound business decisions. They also prepare financial reports for nonmanagement groups, including stockholders, creditors, regulatory agencies, and tax authorities." [AR at 89]

5. Section 10(c) of the APA provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not di-

Naturalization Act also grants jurisdiction to district courts over actions involving visa petitions. *See* 8 U.S.C. § 1329 (2000) ("The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter[.]").

Accordingly, EG was not required to exhaust its administrative remedies before filing suit in United States District Court. *Young*, 114 F.3d at 882. USCIS concurs with this conclusion. *See* Defendant's Cross–Motion at 4. Therefore, the Court will exercise its jurisdiction to decide the instant cross-motions.

B. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the pleadings to defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A mere "scintilla" of evidence will be insufficient to support Plaintiff's position; there must be evidence

on which the jury could reasonably find for Plaintiff. *Id.* at 252, 106 S.Ct. 2505. This Court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

C. *Standard of Review Under the Administrative Procedures Act*

■ Under the Administrative Procedures Act ("APA"), district court review of a visa petition denial is limited to a determination of whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(a); *Simms v. National Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir.1995). Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency even if the court might otherwise disagree with the agency's decision. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Simms*, 45 F.3d at 1003.

■ A determination of whether an agency's action was arbitrary, capricious, or an abuse of discretion must be made on the basis of the administrative record. *Tongatapu Woodcraft Hawaii Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984). Agency action may be reversed only if the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to

rectly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application

for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." [5 U.S.C. § 704]

the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of the agency expertise. *Marsh,* 490 U.S. at 378, 109 S.Ct. 1851; *Simms,* 45 F.3d at 1003.

■ An agency's factual findings are reviewed under the substantial evidence standard. *Steeltech, Ltd. v. U.S. Environmental Protection Agency,* 273 F.3d 652, 656–57 (6th Cir.2001). Under the substantial evidence standard, review of an agency decision is limited to determining whether the decision is supported by substantial evidence in the record as a whole, not whether there was substantial evidence for a result other than that arrived at by the agency. *Id.* at 657. In immigration cases, the Supreme Court has interpreted the substantial evidence standard to mean that a particular agency finding can be reversed only if a reasonable fact-finder would be compelled to reach a different conclusion. *Smith v. Chater,* 99 F.3d 780, 782 n. 3 (6th Cir.1996) (citing *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

## IV. *DISCUSSION*

The USCIS denied EG's H–1B visa petition on the ground that EG did not sustain its burden to prove the duties of the "accountant" position at Mexican Wholesale Grocery required the services of someone with Ms. Yonan's education. EG contends that summary judgment is appropriate because it submitted substantial evidence to support the I–129 visa petition. EG also argues that USCIS abused its discretion when it denied the H–1B visa application. USCIS, on the other hand, counters that EG did not meet its burden of establishing that the offered employment qualified as a "specialty occupation." Based on the administrative record, the Court finds no abuse of discretion in this case.

A. *Applicable Law and Regulations*

A United States employer may file an H–1B visa petition on behalf of an alien worker. *See* 8 U.S.C. § 1184(c). The H–1B nonimmigrant employment visa grants an alien temporary admission into the United States to

perform services ... in a specialty occupation described in section 1184(i)(1) of this title ... who meets the requirements for the occupation specified in section 1184(i)(2) of this title ... and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1) of this title.

*See* 8 U.S.C. § 1101(a)(15)(H)(i)(b).

■ In order to qualify for a nonimmigrant H–1B visa, the petitioning employer and the alien beneficiary must satisfy a two-prong test: "(1) the position that the alien seeks to occupy must qualify as a 'specialty occupation'; and (2) the alien must herself be qualified to perform services in said occupation." *Shanti, Inc. v. Reno,* 36 F.Supp.2d 1151, 1153 (D.Minn. 1999). The employer petitioning for an H–1B visa and the alien beneficiary have the burden of proof in an administrative proceeding to prove that both prongs of the test are satisfied. *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa ... the burden of proof shall be upon such person to establish that he is eligible to receive a visa.").

Section 1184(i)(1) in Title 8 of the United States Code describes a "specialty occupation" as requiring:

(A) theoretical and practical application of a body of highly specialized knowledge, and

(B) attainment of a bachelor's or higher degree in the specific specialty (or its

equivalent) as a minimum for entry into the occupation in the United States.

Additionally, 8 U.S.C. § 1184(i)(2) mandates that an alien petitioning for employment in a "specialty occupation" must satisfy one of the following requirements:

(A) full state licensure to practice in the occupation, if such licensure is required to practice in the occupation,

(B) completion of the degree described in paragraph (1)(B) for the occupation, or

(C)(i) experience in the specialty equivalent to the completion of such degree, and (ii) recognition of expertise in the specialty through progressively responsible positions relating to the specialty.

The Code of Federal Regulations further describes a "specialty occupation" and provides a non-exhaustive list of professions that qualify as "specialty occupations":

Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

Since this list is non-exhaustive, USCIS developed a set of criteria to determine whether an occupation qualifies as a "specialty occupation." The four criteria, one of which a particular position must satisfy, are set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A):

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) the degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) the employer normally requires a degree or its equivalent for the position; or

(4) the nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

B. *Denial of the H–1B visa petition was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.*

The parties agree that Ms. Yonan is qualified to perform services in a "specialty occupation" since she holds "a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university." 8 C.F.R. § 214.2(h)(4)(iii)(c)(2). Global Education Group, Inc. evaluated Ms. Yonan's credentials and determined that her Bachelor of Science degree in Accounting obtained at the University of Baghdad was equivalent to a Bachelor of Science degree in Accounting awarded at an accredited university in the United States. USCIS adopted this determination. Therefore, the issue is not whether Ms. Yonan qualifies as a member of a "specialty occupation," but whether EG's proffered position of "accountant" qualifies as a "specialty occupation" under the Immigration and Naturalization Act ("INA").

Resolution of this issue necessarily involves an analysis of whether the title of a particular position automatically qualifies the position as a "specialty occupation" and if not, whether EG met any of the four criteria set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A). EG contends that the proffered position of "accountant" qualifies as a "specialty occupation" and that a bachelor's degree is a minimum requirement for entry into the "accountant" position. In support of this contention, EG initially submitted a letter detailing the terms of employment and describing the proposed job duties with corresponding time percentages.

EG correctly asserts that USCIS recognizes "accounting" as a "specialty occupation." *See* 8 C.F.R. § 214.2(h)(4)(ii). Relying on two decisions of the Board of Immigration Appeals ("BIA"),[6] EG argues that USCIS failed to follow its own precedent because those decisions recognize an accountant as a "specialty occupation." It is true that an abuse of discretion may occur when USCIS fails to follow its own regulations, or where the decision is inconsistent with the agency's own precedent. *Shanti, Inc. v. Reno*, 36 F.Supp.2d 1151, 1153 (D.Minn.1999). However, the BIA decisions are inapplicable here because they both address the sole issue of whether the immigrant applicants' education, combined with their experience, qualified them as members of the accounting profession. Based on the determination that Ms. Yonan's foreign accounting degree is equivalent to a U.S. accounting degree, USCIS does not contest that she qualifies as a member of the accounting profession. Instead, the issue in this case is whether the proffered position qualifies as a "specialty occupation."

EG mistakenly believes that the title of a particular position is determinative when deciding whether the position qualifies as a "specialty occupation." As USCIS concluded, however, EG's proffered position of "accountant" is susceptible to different interpretations. USCIS stated that "[r]egardless of the position title, the actual position duties serve as the basis for determining eligibility." AR at 89. Further, USCIS noted that the "importance of evaluating position duties is the fact that it is common for duties under a given job title to differ greatly between organizations." *Id.* Accordingly, USCIS analyzed the proposed job duties and compared and contrasted them to high-level accounting positions, such as management accountants, and low-level accounting positions, such as bookkeeping, accounting, and auditing clerks.

Relying on *Shanti, Inc. v. Reno*, USCIS argues that the important considerations in determining whether a position qualifies as a "specialty occupation" are job description, nature of the employment, size of the business, and other relevant factors. *Shanti*, 36 F.Supp.2d at 1164–66. EG acquiesces in a portion of this argument by agreeing that "it is the duties themselves rather than the size of the employer which is relevant." *Young China Daily v. Chappell*, 742 F.Supp. 552, 554 (N.D.Cal.1989). EG relies on this statement, however, for the proposition that its small size does not prohibit it from requiring an accounting professional. EG relies on *Young China Daily v. Chappell*, arguing that USCIS abused its discretion when it considered the size of the business in determining whether the position qualified as a "specialty occupation."

---

6. *Matter of Arjani*, 12 I & N Dec. 649 (BIA 1967); *Matter of Doultsinos*, 12 I & N Dec. 153 (BIA 1967).

What EG fails to grasp is that the duties of the proffered position, *combined with* the position title and business size, are all components in the H–1B visa petition analysis. "The statutory and regulatory framework of the H–1B visa obliges the [USCIS] to examine the interplay among the petitioner, the job, and the industry." *All Aboard Worldwide Couriers, Inc. v. Attorney General,* 8 F.Supp.2d 379, 381 (S.D.N.Y.1998). The Sixth Circuit, in an unpublished decision, has also determined that the size of the employer is a relevant consideration, although not determinative:

> We also believe that the INS acted reasonably in considering the size and scope of China Chef's business. The Court in *Young China Daily v. Chappell,* 742 F.Supp. 552, 554 (N.D.Cal. 1989), on which China Chef relies for this allegation of error, made only the narrow ruling that the duties of a graphic designer at a small newspaper do not necessarily differ from those of a graphic designer at a major newspaper. This leads neither to the general conclusion that the skills required to be a manager of a small company are necessarily the same as those required to be a manager at a large company, nor to the specific conclusion that the size of China Chef's business is not relevant to the nature of the duties of its manager.

*China Chef, Inc. v. Puelo,* 12 F.3d 211 (table), 1993 WL 524276 at *2 (6th Cir. Dec.15, 1993).

 Likewise, EG's reliance in this case on *Young China* does not lead the Court to the specific conclusion that the size of Mexico Wholesale Grocery's business is not relevant to the nature of Ms. Yonan's proffered duties. Although USCIS should not rely exclusively on the size of the employer's business when making a determination as to whether a position qualifies as a "specialty occupation," the Court does not find it an abuse of discretion for USCIS to consider size as just one factor in its analysis. It is reasonable to assume that the size of an employer's business has an impact on the duties of a particular position. Here, USCIS considered not only the size of EG's business, but also Ms. Yonan's proffered job duties and the duties of similar positions set forth in the OOH. Under these circumstances, the Court concludes that USCIS did not act arbitrarily or capriciously.

EG also contends that USCIS limited its review to only the OOH without properly examining the actual duties of the position identified in the record. The Court does not agree. The OOH provides occupational descriptions and minimum entrance requirements generally expected for entry into a particular employment field in the United States. EG submits that the OOH is too broad and general to accurately reflect the duties of EG's proffered position of "accountant." Relying on *Young China Daily,* EG argues that USCIS, therefore, focused on irrelevant rather than relevant factors.

In *Young China Daily,* a U.S. District Court in California held that an INS decision denying plaintiff temporary worker status as a graphic designer was arbitrary and capricious because the "INS did not analyze the nature of the duties described on the petition in considering whether or not the position requires a professional." *Young China Daily,* 742 F.Supp. at 554. The court found that rather than analyzing the visa applicant's prospective duties, the INS mistakenly relied on irrelevant factors such as the size of the plaintiff newspaper, the amount of the proffered salary, and the absence of a prior record of hiring professionals for the position. *Id.*

EG's reliance on *Young China Daily* is misguided. Unlike the INS in *Young China Daily,* USCIS in this case *did* ana-

lyze the nature of the proffered duties and compared and contrasted them to analogous positions described in the OOH. The Court must emphasize that USCIS initially concluded that the materials submitted with EG's petition were insufficient and requested additional documentation showing that the proffered position qualified as a "specialty occupation." After receiving this request, EG submitted a detailed description of daily duties with corresponding time percentages and a chart identifying EG's six employees and their respective positions and education.[7]

After considering this evidence, USCIS first noted that the proposed job duties did not include "performance of payroll duties or year-end taxes and/or audits for the business." AR at 89. USCIS further discussed how EG's evidence did not fall within the OOH occupation description of a "management accountant":

> The record before the service does not contain evidence that the position offered includes complex or advanced accounting duties including the preparation of detailed financial reports for outside groups such as stockholders, regulatory agencies and tax authorities. Nor does the record contain evidence that the position requires an individual with knowledge of sophisticated accounting techniques normally associated with the duties of a management accountant. Petitioner does not appear to have an "executive team" and there is no evidence that the position offered would be involved in performance evaluation, cost management or asset management. [AR at 89].

Instead, USCIS concluded that the proposed duties were more analogous to those of a "Bookkeeping, Accounting and Auditing Clerk" based upon the description of the proposed duties, the size of EG, and EG's business focus. AR at 89. Specifically, USCIS stated that the "majority of the beneficiary's time will be spent in collecting 'and analyzing supplier data such as invoices, accounts payables, accounts receivables' then compiling this information into financial reports and preparing entries into each account of the general ledger of daily activity for each customer." AR at 90. The administrative record indicates that USCIS considered all relevant factors, analyzed Ms. Yonan's proposed job duties, and concluded that the position was not equivalent to a "management accountant." USCIS was not compelled to find that the proposed duties were inherently specialized. *All Aboard Worldwide Couriers, Inc. v. Attorney General,* 8 F.Supp.2d 379, 381 (S.D.N.Y.1998). Since review under the arbitrary and capricious standard is narrow, the Court may not substitute its judgment for that of the agency even if the Court might otherwise disagree with the agency's decision. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Simms,* 45 F.3d at 1003.

In response to USCIS's request for additional evidence, EG also submitted a letter from an accounting firm, stating that the firm employs experienced CPAs holding baccalaureate or higher degrees. The letter further stated that the firm provided "accounting and bookkeeping" services to EG for approximately four years. EG also submitted four "accountant" job posting printouts from www.monster.com identifying specific job duties for those positions. EG argues that the letter is sufficient to prove EG normally requires a degree or

---

7. The administrative record reflects that Mexican Wholesale Grocery employs six individuals: a President and Vice President, both of whom possess Bachelor of Science degrees; and a truck driver, office manager, and two stock boys, all of whom possess only a high school diploma. [AR at 77]

its equivalent for the position because the firm's employees all possess baccalaureate degrees or higher, and the firm has done accounting work for EG in the past. Furthermore, EG contends that the job postings are sufficient to prove the degree requirement is common to the industry in parallel positions among similar organizations because the postings contain similar job duties and also require a bachelor's degree in accounting.

Factors often considered by USCIS when determining whether a particular industry requires a baccalaureate degree or higher include: whether the OOH reports that the industry requires a degree, whether the industry's professional association has made a degree a minimum entry requirement, and letters or affidavits from firms or individuals in the industry testifying that such firms "routinely employ and recruit only degreed individuals." *See Hird/Blaker Corp. v. Slattery,* 764 F.Supp. 872 (S.D.N.Y.1991). USCIS recognized that even though EG retained the accounting firm for nearly four years, "the duties performed by the CPA *included bookkeeping services."* AR at 90 [Emphasis in original]. Additionally, USCIS concluded that the job postings were insufficient to establish that businesses of similar type and number of employees typically require services of individuals with specialized degrees. *Id.* A review of the administrative record does not lead to the conclusion that USCIS merely reiterated the criteria for classification and made a bare assertion that the position did not meet the requirements. Rather, the USCIS considered all of the evidence submitted by EG and concluded that it was insufficient to establish that Ms. Yonan's position qualified as a "specialty occupation" and therefore, that a baccalaureate or higher degree was not required to fill the position. The Court is not permitted to substitute its judgment for that of the agency. *Marsh,* 490 U.S. at 376, 109 S.Ct. 1851.

Additionally, the substantial evidence standard does not require the Court to determine whether there was substantial evidence in the record to support a result other than that arrived at by the agency; it merely requires the Court to determine whether the agency decision is supported by substantial evidence in the record as a whole. *Steeltech, Ltd. v. U.S. Environmental Protection Agency,* 273 F.3d 652, 656–57 (6th Cir.2001). Based on the foregoing discussion, the Court finds that the USCIS's determination that the proposed position was essentially that of a "Bookkeeping, Accounting and Auditing Clerk," and that the position does not normally require a professional degree in accounting, was supported by substantial evidence.

While EG disagrees with the analogy between its "accountant" position and the OOH descriptions, EG has not advanced any further evidence to support its argument and distinguish its position from the OOH. Therefore, EG has not set forth any substantive grounds to show that USCIS abused its discretion or acted arbitrarily or capriciously. Under these circumstances, the Court concludes that the USCIS denial of EG's H–1B visa petition was not arbitrary, capricious, an abuse its discretion, or otherwise not in accordance with law. Accordingly, Defendant is entitled to summary judgment.

## IV. *CONCLUSION*

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's May 11, 2006 Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's June 6, 2006 Cross–Motion for Summary Judgment is GRANTED.