RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHELLE VALENT,

                                             _Petitioner_,

          _v._

COMMISSIONER OF SOCIAL SECURITY,

                                              _Respondent_.

> No. 17-2109

_____

Petition for Review of a Civil Money Penalty of the Social Security Administration.
C-13-984—Social Security Administration; A-15-104—Departmental Appeals Board.

Argued:  October 3, 2018

Decided and Filed:  March 20, 2019

Before:  GILMAN, KETHLEDGE, and BUSH, Circuit Judges.

_____

### COUNSEL

_____

**ARGUED:**  Christopher P. Desmond, JOHNSON LAW, PLC, Detroit, Michigan, for Petitioner.
Patricia Gaedeke**,** UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for
Respondent.  **ON BRIEF:**  Paul F. Doherty, JOHNSON LAW, PLC, Detroit, Michigan, for
Petitioner.  Laura Anne Sagolla, Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE,
Detroit, Michigan, for Respondent.

      GILMAN, J., delivered the opinion of the court in which BUSH, J., joined.
KETHLEDGE, J. (pp. 13–19), delivered a separate dissenting opinion.

_____

### OPINION

_____

      RONALD LEE GILMAN, Circuit Judge.  The Commissioner of Social Security imposed
an assessment of $51,410 and a civil monetary penalty of $75,000 on petitioner Michelle Valent
after the Social Security Administration found that Valent failed to disclose that she had engaged
in paid work activity while receiving Social Security disability benefits.  Valent argues that

42 U.S.C. § 421(m)(1)(B) prohibits the Administration from considering her work activity in determining whether she continues to be eligible as a disability-benefits recipient.

She therefore contends that her failure to disclose her paid work activity was not a material omission, such an omission being a prerequisite for the Administration to impose an assessment and a penalty under 42 U.S.C. § 1320a-8(a). Finally, she asserts that even if her failure to disclose her paid work activity was a material omission, she did not have actual or constructive knowledge that her omission was material. For the reasons set forth below, we **DENY** Valent's petition for review and **AFFIRM** the judgment of the Departmental Appeals Board.

## I. BACKGROUND

### A. Statutory framework

The Social Security Act provides for the payment of benefits to individuals with a "disability," which, as relevant here, is defined as a "medically determinable physical or mental impairment" that prevents a person from doing "any substantial gainful activity" for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To receive disability benefits under the Act, an individual must apply to the Commissioner, who determines whether the applicant satisfies the statutory criteria. 42 U.S.C. § 423(a)–(b).

Once an individual qualifies for benefits, the Commissioner must periodically verify that the beneficiary continues to be eligible for the program, a process called a "continuing disability review." 42 U.S.C. § 421(i), (m). Congress amended the Act in 1999 "to help individuals with disabilities return to work." Pub. L. No. 106-170, § (2)(a)(11), 113 Stat. 1860. The amended Act provides that, for the purpose of determining whether an individual who has received benefits for at least 24 months remains entitled to receive them, "no work activity engaged in by the individual may be used as evidence that the individual is no longer disabled." 42 U.S.C. § 421(m)(1)(B). But the Act also states that the Commissioner may terminate benefits if the beneficiary "has earnings that exceed the level of earnings established by the Commissioner to represent substantial gainful activity." 42 U.S.C. § 421(m)(2)(B).

## B.  Factual background

Valent applied for Social Security disability benefits in October 2003.  The Administration found that she was disabled since March 2003, based primarily on various psychological problems, including depression.  The Commissioner conducted a continuing-disability review in 2010 and found that Valent remained disabled.

But in January 2012, the Administration's Office of Inspector General (IG) received a tip that Valent had been working since 2009 at the War Era Veterans Alliance, an organization founded and owned by her brother and sister-in-law.  A month later, the IG began an investigation into whether Valent had indeed worked at the Alliance.  Valent signed forms during that investigation affirming that she had not earned income since 2003 or worked since 2004.

The IG, to the contrary, concluded that Valent had been working at the Alliance since 2009 and that her failure to report her paid work activity was an omission of a "material fact." *See* 42 U.S.C. § 1320a-8(a).  Based on that omission, the IG recommended that Valent be assessed $68,547 (the amount of benefits paid to her since she had returned to work) and that she pay a civil penalty of $100,000 for her failure to report her paid work activity to the Administration.  Section 1320a-8(a)(1)(C) authorizes the Administration to impose a penalty of up to $5,000 for each statement or representation in which an individual receiving Social Security disability benefits withheld material information.  The IG determined that Valent made 41 material omissions—one for each month during which she received benefits without disclosing her work activity that generated earnings.  He then decided to impose a penalty of $100,000 instead of the maximum penalty of $205,000.

## C.  Procedural background

Valent requested a hearing before an administrative law judge (ALJ), who heard testimony from the tipster and from Valent's brother, among others.  Her brother testified that he had assigned Valent simple tasks and paid her about $400 per week, essentially as an act of charity.  In a June 2014 decision, the ALJ agreed with the IG's finding that Valent had indeed worked for and been paid by the Alliance, her brother's motivation notwithstanding.  But the

ALJ disagreed with the IG that Valent's unreported work activity was an omission of a "material fact" because, according to the ALJ, 42 U.S.C. § 421(m)(1)(B) prevents the Commissioner from considering work activity "in evaluating whether [Valent] continued to be entitled to benefits or payments under the Act." The ALJ therefore held that the IG had no basis for either the assessment or the penalty.

The Departmental Appeals Board (the Board) reversed the ALJ's ruling in November 2014, concluding that the ALJ's interpretation of 42 U.S.C. § 421(m)(1)(B) was incorrect. Specifically, the Board held that "[s]ince work is relevant in determining whether amounts paid to a recipient are earnings from work, work is a fact [that the Administration] may consider in determining whether a 24-month recipient is entitled to benefits." The Board remanded the case to the ALJ to make factual findings as to whether Valent knew or should have known that the omission of her work activity that generated earnings was material and would mislead the Administration.

On remand, the ALJ reiterated his opinion that § 421(m)(1)(B) barred the Administration from considering Valent's work activity. He therefore concluded that Valent had no reason to know that her failure to disclose her work activity was an omission of a material fact. Ultimately, the ALJ held that the Social Security Act and the Administration's regulations "are not clear enough for a person of reasonable intelligence to know what activity is reportable as work activity." The ALJ accordingly again declined to impose either an assessment or a penalty.

Once more, the Board reversed the ALJ's decision. It noted that constructive knowledge that an omission of fact is material is sufficient under 42 U.S.C. § 1320a-8(a). Furthermore, the Board disagreed with the ALJ's conclusion that the regulatory scheme is so confusing that a reasonable person would not know that withholding the report of gainful work activity constitutes the omission of a material fact. So although the Board deferred to the ALJ's findings of fact, it imposed a special assessment of $51,210 and a penalty of $75,000, both of which were less than the amounts originally levied by the IG. This petition for review followed.

## II. ANALYSIS

### A. Standard of review

We review the Administration's interpretation of law under the framework established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). That framework requires us to engage in a two-step inquiry. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. We engage in step two "if the statute is silent or ambiguous with respect to the specific issue." *Id.* at 843. Then, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

For agency determinations that are not interpreting a statute, we will set them aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Steeltech, Ltd. v. EPA*, 273 F.3d 652, 655 (6th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)) (applying this standard to the EPA's imposition of a civil penalty). And we will accept the Administration's findings of fact if they are "supported by substantial evidence on the record considered as a whole." 42 U.S.C. § 1320a-8(d)(2).

### B. Section 421(m) of the Social Security Act is ambiguous, and the Administration's interpretation of that section is based on a permissible construction of the statute.

The key interpretive question before us is whether the failure of an individual who receives Social Security disability benefits to report work activity that generates earnings constitutes the omission of a "material fact" under 42 U.S.C. § 1320a-8(a). That statute authorizes the Commissioner to impose an assessment and a penalty when a recipient of Social Security disability benefits "omits from a statement or representation . . . or otherwise withholds disclosure of, a fact which the person knows or should know is material to the determination of any initial or continuing right to or the amount of monthly insurance benefits." 42 U.S.C. § 1320a-8(a)(1)(C).

Under step one of the *Chevron* framework, Congress has not "directly spoken to the precise question at issue." *See Chevron*, 467 U.S. at 842. Specifically, the Social Security Act is ambiguous with respect to the question at issue because 42 U.S.C. § 421(m)(1)(B) and m(2)(B) appear to conflict with one another. Section 421(m)(1)(B) states that when an individual has received Social Security disability benefits for at least 24 months, "no work activity engaged in by the individual may be used as evidence that the individual is no longer disabled." But § 421(m)(2)(B) states that such an individual shall be subject to "termination of benefits under this subchapter in the event that the individual has earnings that exceed the level of earnings established by the Commissioner to represent substantial gainful activity." These two provisions create an ambiguity as to whether the Commissioner may consider an individual's work activity that generates earnings. Section 421(m)(1)(B) appears to proscribe taking such activity into account, yet the Commissioner would need to do so in order to determine whether the individual has earnings that amount to "substantial gainful activity."

The Second Circuit in *Cappetta v. Commissioner of Social Security Administration*, 904 F.3d 158 (2d Cir. 2018), addressed this very question and held that "although § 421(m)(1) makes 'work activity' irrelevant as both a reason to conduct a continuing disability review, and as evidence in such a review, the statute just as clearly permits the [Administration] to consider substantial gainful activity to terminate benefits." *Id.* at 168. In *Cappetta*, the court resolved the issue at step one of the *Chevron* framework, holding that "the Commissioner may properly consider a failure to report work activity that generates profit or pay 'material' for purposes of § 1320a-8, and that the plain text of the statute authorizes the Commissioner to do so." *Id.* (The term "profit or pay" comes from the Administration's definition of "substantial gainful activity." *See* 20 C.F.R. § 404.1572.)

Although we disagree with the Second Circuit's holding that the statute *unambiguously* authorizes the Commissioner to "consider a failure to report work activity that generates profit or pay 'material' for purposes of § 1320-8," *Cappetta*, 904 F.3d at 168, we acknowledge that another circuit's differing interpretation of the very statute at issue is evidence of ambiguity in the statutory scheme. *See Salazar v. Butterball, LLC*, 644 F.3d 1130, 1137 (10th Cir. 2011) (holding that a circuit split over whether donning and doffing personal protective equipment is

considered "changing clothes" under 29 U.S.C. § 203(o) shows that the term "changing clothes" is ambiguous). We therefore conclude that the statute is ambiguous as to whether a failure to report work activity that generates profit or pay is a material omission under 42 U.S.C. § 1320a-8.

Having determined that the statutory scheme is ambiguous, we now move on to the second step of the *Chevron* framework: "whether the agency's answer is based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843. The Board concluded that the Administration can consider a beneficiary's "work activity for purposes of determining whether she had earnings from that work activity at the substantial gainful activity level, making information about her work material for purposes of [42 U.S.C] section [1320a-8](a)(1)." In support of this position, the Commissioner argues that the Administration can consider work activity for the "vocational" element of disability, a term that she defines as synonymous with the recipient "engaging in substantial gainful activity." The Commissioner in essence acknowledges that the Administration *cannot* take work activity into account to conclude that a beneficiary like Valent is no longer suffering from a medical disability. But, the Commissioner argues, the Administration *can* take work activity into account in determining whether a beneficiary is engaging in substantial gainful activity. According to the Administration, a failure to report work activity that generates profit or pay is a material omission under 42 U.S.C. § 1320a-8 because such activity is relevant to the beneficiary's "continuing right to . . . benefits." *See* 42 U.S.C. § 1320a-8(a)(1)(C). This argument rings true because work activity that generates earnings can amount to substantial gainful activity, which is a proper ground for terminating benefits under 42 U.S.C. § 421(m)(2)(B).

We conclude that the Administration's interpretation is a permissible construction of the statute. Valent's position is that the Administration can consider "substantial gainful activity" but not "work" or "work activity." As the Commissioner argues, however, this construction of the statutory scheme "makes no sense" and "would be impossible to implement." The Administration would be unable to examine a beneficiary's substantial gainful activity without considering the beneficiary's work activity that generates profit or pay.

Nor does the Administration's interpretation read out or ignore 42 U.S.C. § 421(m)(1)(B). It instead interprets that section, which prohibits the Administration from considering "work activity . . . as evidence that the individual is no longer disabled," to bar it from considering work activity in determining whether a beneficiary is *medically* disabled. In other words, according to the Administration's permissible construction of the statute, if an individual claims Social Security disability benefits because of, say, a back injury, and the Administration later determines that the individual was engaging in manual labor that belies his or her back injury, then it cannot use this work activity as evidence that the individual is no longer *medically* disabled. But if the work activity generates profit or pay, then the Administration can consider the work activity in determining whether the individual has "earnings that exceed the level of earnings established by the Commissioner to represent substantial gainful activity" under § 421(m)(2)(B).

The Administration's interpretation of the statutory scheme is further supported by the legislative history of 42 U.S.C. § 421(m). Subsection (m) was added to the Social Security Act as part of the Ticket to Work and Work Incentives Improvement Act of 1999. Pub. L. No. 106–170, § 111(a), 113 Stat. 1860. The official committee report for that Act explains that the changes in § 421(m) are "intended to encourage long-term SSDI [Social Security Disability Insurance] beneficiaries to return to work by ensuring that work activity would not trigger an unscheduled *medical* review of their eligibility." H.R. Rep. No. 106-393, pt. 1, at 45 (1999) (emphasis added). It continues, however, by noting that, "like all beneficiaries, long-term beneficiaries would have benefits suspended if earnings exceeded the substantial gainful activity level, and would be subject to periodic continuing disability reviews." *Id.*

As the Second Circuit held in *Cappetta*, "[t]hose observations support the Commissioner's reading of the statute, because they demonstrate Congress's clear intent to continue making substantial gainful activity—which the SSA assesses by looking primarily at earnings derived *from work*—relevant and applicable to SSDI beneficiaries." *Cappetta*, 904 F.3d at 169 (emphasis in original). In sum, we defer to the Administration's permissible construction of 42 U.S.C. § 421(m)(1)(B) and (m)(2)(B) as allowing it to consider a beneficiary's work activity that generates profit or pay because such activity goes to the

beneficiary's substantial gainful activity. We also defer to the Administration's permissible construction that a failure to report work activity generating profit or pay constitutes a material omission under 42 U.S.C. § 1320a-8.

**C. The Administration's imposition of an assessment and a penalty in this case is consistent with its permissible construction of the Social Security Act.**

This leaves the question of how to apply the above principles to the present case. Both the IG and the Board found that Valent made a material omission under 42 U.S.C. § 1320a-8 when she failed to disclose her work activity with the War Era Veterans Alliance, an activity that generated profit or pay. According to the dissent, Valent's assessment and penalty in this case were based solely on her failure to report work activity, not on her failure to disclose earnings. Dissenting Op. 15–16. The dissent further notes that the Commissioner's counsel agreed during oral argument that the Commissioner imposed an assessment and a penalty in the present case based on Valent's failure to disclose work activity. Dissenting Op. 16.

But the dissent overlooks the Administration's conclusion that work activity is a necessary component of substantial gainful activity, which is a proper ground for terminating benefits under 42 U.S.C. § 421(m)(2)(B). Under the Administration's permissible construction of the Social Security Act, it can consider a beneficiary's work activity as an element of substantial gainful activity. But it cannot take work activity into account (after the beneficiary has received benefits for at least 24 months) to conclude that the beneficiary is no longer suffering from a medical disability. Here, the Administration did not use Valent's work activity to make any conclusions regarding her medical disability, so its imposition of an assessment and a penalty in this case is consistent with the Administration's permissible construction of the statute.

The dissent also contends that "the Commissioner imposed the sanction based solely on Valent's failure to report 'work activity' *period*—without regard to whether she received any earnings from that activity." Dissenting Op. 15 (emphasis in original). We respectfully disagree. In the IG's June 3, 2013 letter to Valent, the IG states that Valent "failed to report to [the Administration] that [she] worked at the War Era Veterans Alliance" and that her brother, the coowner of the Alliance along with Valent's sister-in-law, "paid [her] $400 per week." Valent

was thus being paid for her work, and the Administration took this fact into account when it imposed an assessment and a penalty. Whether the Administration can impose an assessment and a penalty on a beneficiary who fails to disclose *unpaid* work activity is not a question before us because Valent engaged in and failed to disclose her *paid* work activity with the Alliance.

**D. Valent had constructive notice that her failure to report her work activity that generated profit or pay was a material omission that misled the Administration.**

As we concluded earlier (*see* Part II.B. above), we defer to the Administration's permissible determination that a failure to report work activity that generates profit or pay is a material omission under 42 U.S.C. § 1320a-8. We now turn to the two other elements of § 1320a-8: (1) whether Valent knew or should have known that her omission was material, and (2) whether she knew or should have known that her omission was misleading to the Administration. *See* 42 U.S.C. § 1320a-8(a)(1)(C). The Board, in its second decision in this case, concluded that Valent should have known that the failure to report her paid work activity with the Alliance was a material omission that misled the Administration.

We agree with the Board that the statutory scheme and the Administration's regulations put Valent on constructive notice that her failure to report was material. As the ALJ held on remand, "[t]he Administrative Procedure Act requires publication of legislative rules adopted by federal agencies and, based on that publication[,] the public has at least constructive, if not actual knowledge of the requirements of the regulations." Several regulations put Valent on notice of her need to report work activity that generated profit or pay, and that a failure to do so would mislead the Administration.

"Substantial gainful activity" is defined in 20 C.F.R. § 404.1572 as "work activity that you do for pay or profit." And 20 C.F.R. § 404.1588(a) requires recipients of Social Security disability benefits to tell the Administration if they "return to work," if they "increase the amount of [their work,]" or if their "earnings increase." All of this is consistent with the statutory framework because, as the Second Circuit held in *Cappetta*, "calculating whether earnings amount to substantial gainful activity that prevent the continuing receipt of disability benefits is a complex undertaking that requires the [Administration] to have a complete picture of a SSDI recipient's earnings." *Cappetta*, 904 F.3d at 169 (citing 20 C.F.R. §§ 404.1574, 404.1592–

404.1592a).   Ultimately, the Board's conclusion that Valent had constructive notice that her failure to report her work activity with the Alliance was a material omission that misled the Administration is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *See Steeltech, Ltd. v. EPA*, 273 F.3d 652, 655 (6th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)).

The dissent, however, argues that the Administration's own regulation—specifically, 20 C.F.R. § 404.1594—refutes the position of the Commissioner and shows that Valent did not have constructive notice that her failure to disclose her work activity was a material omission. Dissenting Op. 19.  We again respectfully disagree.  The regulation reads as follows:

> If you are currently entitled to disability insurance benefits as a disabled worker . . . and at the time we are making a determination on your case you have received such benefits for at least 24 months, we will not consider *the activities you perform* in the work you are doing or have done during your current period of entitlement based on disability if they support a finding that your disability has ended.

20 C.F.R. § 404.1594(i)(2) (emphasis added).

The regulation is consistent with the position advanced by the Administration in this case. In particular, the regulation states that the Administration "will not consider the activities you perform in the work you are doing."  *Id.*   This means that the Administration cannot use the activities that a beneficiary performs during work to demonstrate that the beneficiary is no longer *medically* disabled.  But it can use that work activity, if that activity generates profit or pay, as evidence that the beneficiary engaged in substantial gainful activity.

**E.  The issues raised in Valent's supplemental brief are not reviewable.**

This brings us to one final matter to be decided, which is based on our request that the parties file supplemental briefs to address the Second Circuit's decision in *Cappetta*.  In the course of doing so, Valent raised three new issues in her supplemental brief: (1) whether the Board can impose an assessment and penalty in the first instance, (2) whether the assessment and penalty are supported by substantial evidence, and (3) whether the Administration considered the fact that it suffered no actual loss.  But these new arguments are not properly before us because

they were not raised in Valent's opening brief.  *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Appellants must raise any challenge to a district court or administrative decision in their opening brief.").  In addition, Valent did not challenge the amount of the assessment and penalty before the Board, and our jurisdiction is limited to issues raised administratively.  *See* 42 U.S.C. § 1320a-8(d)(1).  We therefore conclude that the new arguments raised in Valent's supplemental brief are not reviewable.

## III.  CONCLUSION

For all of the reasons set forth above, we DENY Valent's petition for review and AFFIRM the judgment of the Board.

---

**DISSENT**

---

KETHLEDGE, Circuit Judge, dissenting.  In every case where an Article III court defers to the Executive's interpretation of a statute under *Chevron*, our constitutional separation of powers is surely disordered.  That disorder, the Supreme Court has said, is constitutionally permissible.  But it is disorder nonetheless.  For whenever a federal court declares a statute ambiguous and then hands over to an executive agency the power to say what the statute means, the Executive exercises a power that the Constitution has assigned to a different branch.

One can conceive of this transfer in two ways.  As *Chevron* itself conceives of it, the executive branch resolves the ambiguity by exercising *legislative* power to define the statute's terms.  467 U.S. at 843-44.  Under that view, *Chevron* allows an executive agency to impose binding obligations upon our citizenry—which is to say, to legislate—through a process vastly less difficult and subject to democratic scrutiny than the legislative process prescribed in the Constitution.  *See* U.S. Const. art. I, § 7.  For where the Constitution requires the concurrence of the House, the Senate, and the President (or an overwhelming consensus in the House and Senate)—the approval, in other words, of every component of the elected branches—*Chevron* requires only the approval of a single agency head.  Alternatively, *Chevron* effects an abdication of "[t]he judicial power" vested in Article III courts—as the judicial branch cedes to the Executive the "emphatic[] . . . province and duty of the judicial department to say what the law is."  U.S. Const. art. III, § 1; *Marbury v. Madison*, 1 Cranch 137, 177 (1803).  And under either conception of *Chevron*, the agency is free to expand or change the obligations upon our citizenry without any change in the statute's text.  *See Nat'l Cable & Telecomm. Assoc. v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005).

Under *Chevron* itself, courts should ensure that this disorder happens as rarely as it lawfully can.  *Chevron* directs courts to exhaust all the "traditional tools of statutory construction"—and there are many of them—before surrendering to some putative ambiguity and thereby allowing the Executive to exercise power belonging to another branch.  *See* 467 U.S.

at 843 n.9.  For just as the separation of powers "safeguard[s] individual liberty," *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 525 (2014), so too the consolidation of power in the Executive plainly threatens it.  In short, an Article III court should not defer to an executive agency's pronouncement of "what the law is" unless the court has exhaustively demonstrated—and not just recited—that every judicial tool has failed.

But that is hardly what happens in reality.  Instead, the federal courts have become habituated to defer to the interpretive views of executive agencies, not as a matter of last resort but first.  In too many cases, courts do so almost reflexively, as if doing so were somehow a virtue, or an act of judicial restraint—as if our duty were to facilitate violations of the separation of powers rather than prevent them.

In this case, respectfully, the tools of statutory construction are hardly employed.  Rather than analyze the interpretive issue, the majority merely frames it.  And the agency's interpretation—now the law of our circuit—construes the words of the statute in a manner that no ordinary speaker of the English language would recognize.  (Agencies are experts at policy, but not necessarily at statutory interpretation.)  Meanwhile, the majority overlooks more case-specific grounds on which Valent is entitled to relief.

## I.

The question presented by this case is whether the Social Security Act authorized the Commissioner to sanction Valent for her failure to report her "work activity."  The Act allows the Commissioner to impose certain penalties and assessments for each instance in which a person "omits from a statement or representation . . . or otherwise withholds disclosure of, a fact which the person knows or should know is material to the determination of any initial or continuing right" to disability insurance benefits.  42 U.S.C. § 1320a-8(a)(1)(C).  To impose a penalty and assessment, the Commissioner bears the burden of proving three elements:  first, that a person failed to disclose a "material fact"; second, that the person had reason to know the fact was "material"; and third, that the person had reason to know that failure to disclose the fact was "misleading" to the agency.  *Id.*; 20 C.F.R. § 498.215(b)(2).  A fact is "material" if the

Commissioner of Social Security "may consider" it when "evaluating whether an applicant is entitled to benefits[.]" 42 U.S.C. § 1320a-8(a)(2).

The Commissioner imposed the assessment and penalty (hereinafter, "the sanction") against Valent based solely on her failure to disclose her "work activity" at the Alliance. R. 18 at 835; *see also* R. 18 at 119. Valent argues that her work activity could not be "material" because the Commissioner could not use it as evidence against her. Section § 421(m)(1)(B) provides in relevant part:

> (m) Work activity as basis for review
>
> (1) In any case where an individual entitled to disability insurance benefits . . . has received such benefits for at least 24 months—
>
> . . .
>
> (B)  no *work activity* engaged in by the individual may be used as evidence that the individual is no longer disabled[.]

42 U.S.C. § 421(m)(1)(B) (emphasis added). The Commissioner may terminate benefits, however, if the beneficiary "has *earnings*" that exceed an amount "established by the Commissioner to represent substantial gainful activity." *Id.* § 421(m)(2)(B) (emphasis added). The question, then, is whether the Commissioner could "consider" Valent's work activity when determining whether she remained "entitled to benefits"—in which case her work activity would be "material[,]" *id.* § 1320a-8(a)(2)—even though her work activity may not "be used as evidence" that she was "no longer disabled." *Id.* § 421(m)(1)(B).

As an initial matter, the majority repeatedly misstates the basis on which the Commissioner imposed the sanction at issue here. The Commissioner did not, as the majority recites throughout its opinion, impose the sanction based on Valent's failure to report "work activity *that generates earnings*" or "work activity *that generates profit or pay*[.]" Maj. Op. at 6, 8 (emphasis added). That characterization distorts the question presented by blending a fact that the agency may use as evidence against a beneficiary (*i.e.*, her earnings) with a fact the agency may not (*i.e.*, her work activity). Instead, the Commissioner imposed the sanction based solely on Valent's failure to report "work activity" *period*—without regard to whether she received any earnings from that activity. For example, the ALJ on remand noted: "It is important to

recognize that the [Inspector General] did not charge [Valent] with failure to report earnings or failure to report substantial gainful activity, both of which are material facts. The [IG] cited failure to report *work activity* as the basis for the [sanction.]" R. 18 at 124 (emphasis added). The Board likewise wrote that the Inspector General had proposed the sanction for Valent's "failure to disclose that she had worked while receiving [benefits.]" R. 18 at 10. The Commissioner's brief to this court likewise recited that Valent had "withheld information that she was engaged in work activity while receiving disability benefits." Comm'r Br. at 21. True, as the majority points out, the IG's letter to Valent recited that she had received a stipend from her brother in exchange for her work activity. But the fact remains that the Commissioner's stated basis for imposing the sanction was solely her work activity. The Commissioner's counsel expressly conceded the point at oral argument:

> COURT: As I understand the record here, the Commissioner sought this penalty and repayment of benefits solely on the ground of her failure to disclose work activity, not substantial gainful or earnings.
>
> GOVERNMENT: That's correct.
>
> COURT: Why in the world did the Commissioner do that?
>
> GOVERNMENT: I don't know.

Oral Arg. at 28:02.

Working from this mistaken understanding of the basis for the Commissioner's action, the majority then says that the statute is ambiguous because §§ 421(m)(1)(B) and (2)(B) "appear to conflict with one another." Maj. Op. at 6. That two provisions appear to conflict, however, does not mean they are ambiguous. Instead that means we must use all the tools of statutory construction, if at all possible, to interpret the statute as "an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S 120, 133 (2000) (internal quotation marks omitted). That does not happen here: the majority instead goes on to say that it disagrees with the Second Circuit's reading of this statute, and that "another circuit's differing interpretation of the very statute at issue is evidence of ambiguity in the statutory scheme." Maj. Op. at 6. In *Chevron* cases especially, that assertion cannot be right: that two circuits disagree as to the interpretation of a statute does not mean the Executive gets to interpret it. Sometimes one of the circuit courts

is simply wrong. That is why we have a Supreme Court; and that Court, not the Executive, is the arbiter of circuit splits.

More to the point, on the basis of a conclusory statement about the two provisions at issue, and the mere fact of another court's conflicting decision, the majority moves past *Chevron*'s "step one" and allows the Executive to assume the judicial role. A court more vigilant about the constitutional separation of powers might instead observe that the verbs in the operative provisions here are different: section 421(m)(1)(B) says that a beneficiary's work activity may not be "*used as evidence* that [she] is no longer disabled," *id.* (emphasis added)— potentially a relatively narrow proscription—whereas § 1320a-8(a)(2) says that a fact is "material" if the Commissioner may "*consider*" it when "evaluating whether an applicant is entitled to benefits." *Id.* (emphasis added). Different words in statutes usually have different meanings. *See Henson v. Santander Consumer U.S.A., Inc.*, 137 S. Ct. 1718, 1723 (2017). And just as in civil cases a party is entitled to obtain evidence that might be excluded on any number of grounds from admission at trial, *see* Fed. R. Civ. P. 26(b)(1), Fed. R. Evid. 402, so too might the Commissioner be able to "consider" facts that "may not be used as evidence" in determining disability. Or—to take the majority's putative conflict between §§ 421(m)(1)(B) and (2)(B) head-on—perhaps the agency can terminate benefits based on the beneficiary's "earnings" (which is permitted under § 421(m)(2)(B)) without using her "work activity" as evidence against her (which is proscribed by § 421(m)(1)(B)). (That the agency has elsewhere defined "substantial gainful activity" as used in § 421(m)(2)(B) to include "work activity" does not mean that the two provisions conflict. For if a court can construe the two provisions as "an harmonious whole," then the agency's conflicting interpretation must yield. *Brown & Williamson Tobacco Corp.*, 529 U.S at 133 (internal quotation marks omitted).) But the majority exhausts none of these possibilities before ceding the judicial role.

The interpretation to which the majority then defers is almost a test case for how far an agency can go in *Chevron*'s "step two." Specifically, the agency notes that § 421(m)(1)(B) includes the phrase "no longer disabled[,]" and that, in the agency's paraphrase, disability as defined by 42 U.S.C. § 423(d)(1)(A) "has both a vocational and a medical component." Comm'r Br. at 24. The agency then asserts that "it is not clear whether section 421(m)(1)(B) precludes

the Commissioner from using 'work activity' to determine whether a beneficiary" meets the "medical" component of disability, or the "vocational" component, "or both." Comm'r Br. at 25. From there the agency submits—as an interpretation to which the majority defers—that it can consider "work activity" for purposes of the "vocational" component of disability, but not the "medical" component. But of course the statute is "clear" on what it "precludes": section 421(m)(1)(B) says the Commissioner may not use a beneficiary's work activity as evidence that she is not "disabled" *simpliciter*, which means the agency cannot use a beneficiary's work activity as evidence for *any* part of a determination that she is not disabled. Nothing about that proscription is ambiguous. What the agency proposes here is not interpretation of a statute, but amputation, by which the agency (and now our court) discards roughly half the protection that Congress unambiguously provided to beneficiaries in § 421(m)(1)(B). The agency has not carried its burden to show that Valent's work activity was material within the meaning of § 1320a-8(a)(2).

## II.

Valent is also entitled to relief for a simpler reason: the agency has failed to show that she knew or had reason to know that her work activity was material. The majority finds this element of the sanction met for the same reason the Board did in its second decision: that (in their view) an agency regulation required her to report her work activity. *See* Maj. Op. at 10 (citing 20 C.F.R. 404.1588(a)). But the majority overlooks that the Board itself expressly rejected this very position in its first decision below, when the Board held that this same regulation was "relevant" but "not determinative" of the question whether Valent knew or had reason to know that her work activity was material. R. 18 at 240.

Under the Administrative Procedure Act, we set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under that rule, "[a]gencies are free to change their existing policies[,]" but an agency "must at least display awareness that it is changing position and show that there are good reasons" for the change. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016) (internal quotation marks omitted). An "unexplained inconsistency in agency policy[,]" in contrast, is reason to find it arbitrary and capricious. *Id*. (internal quotation marks omitted).

Here, neither the agency in its brief in this appeal, nor the Board in its second decision, has offered any explanation as to why the Board's position in its first decision was wrong. And yet—in conflict with that position—the Board has proceeded to impose a sanction exceeding $100,000. On this record, therefore, the agency's determination as to this element was arbitrary and capricious.

Finally, a more pertinent regulation—unmentioned by the Commissioner in her brief— seriously undermines the agency's position here. Specifically, in response to the enactment of § 421(m), the Commissioner promulgated a regulation, entitled "How we will determine whether your disability continues or ends." *See* 20 C.F.R. § 404.1594. This regulation assures beneficiaries as follows:

> If you are currently entitled to disability insurance benefits as a disabled worker . . . and at the time we are making a determination on your case you have received such benefits for at least 24 months, we will not *consider* the activities you perform in the work you are doing or have done during your current period of entitlement based on disability if they support a finding that your disability has ended.

20 C.F.R. § 404.1594(i)(2) (emphasis added). The reason for this regulation, as the agency explained it, was simple: "we [have] concluded that there is no other permissible interpretation of the language of section [4]21(m)(1)(B)." 71 Fed. Reg. 66,850 (Nov. 17, 2006). Thus, in this regulation—which by its terms ("you") speaks directly to the beneficiary—the agency interprets the proscription against "use[]" of work activity in § 421(m)(1)(B) to mean that the agency cannot "consider" that activity to "support a finding that your disability has ended." *See* 20 C.F.R. § 404.1594(i)(2). And that quite possibly amounts to an assurance to the beneficiary herself that her work activity was not material. *See* 42 U.S.C. § 1320a-8(a)(2).

I respectfully dissent.